**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANDRE C. HOWARD, ET AL. <br><br> *Plaintiff,* <br><br> v. <br><br> VILLAGE CAPITAL & INVESTMENT, LLC, *et al.* <br><br> *Defendant*. | Civil Action No. 25-04588 <br><br> **OPINION** <br><br> March 27, 2026 |

**SEMPER**, District Judge.

This matter comes before the court upon the July 8, 2025 motion of Defendant MidFirst Bank ("MidFirst")[1], to dismiss the First Amended Complaint of *pro se* Plaintiffs Andre C. Howard and Selina K. Howard (ECF No. 7, "FAC" or "Amended Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 19, "Mot."). Plaintiffs opposed the motion on July 15, 2025. (ECF No. 26, "Opp."). The Court has decided the motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's motion to dismiss Counts I-VI and Count VIII of the Amended Complaint is **GRANTED**.[2]

---

[1] MidFirst Bank was incorrectly named in this action as "Midland Mortgage." This opinion will refer to Defendant as "MidFirst" and the corporate subdivision of MidFirst that conducts servicing activity on behalf of MidFirst as Midland Mortgage ("Midland").

[2] As noted by MidFirst in their motion to dismiss, Count VII of the Amended Complaint only alleges the conduct of Village Capital Investments, LLC, and not the alleged conduct of MidFirst Bank. Accordingly, Count VII was not briefed by MidFirst and the allegations contained therein will not be decided by the Court. (*See* Opp. at 1, n. 1.)

1

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

On or around January 18, 2023, Andre C. Howard executed and delivered a promissory note in the amount of $515,490 to MLB Residential Lending, LLC ("MLB Lending"), to acquire a home located in Union, New Jersey (the "Property"). (ECF 19, Certification of Madison Graspo, Ex. A.) The promissory note was secured by a mortgage on the Property.[4] (ECF 19, Certification of Jonathan M. Etkowicz ("Etkowicz Cert"), Ex. B.) The promissory note and mortgage together will be referred to as the "Loan." The mortgage was recorded by the Union County Clerk on January 31, 2023. (*Id*.)

Village Capital & Investment LLC ("Village Capital"), was the servicer for MLB Lending until March 3, 2025. (FAC at 2-3, Temporary Restraining Order ("TRO") Complaint ("Compl.") Ex. T.)[5] (ECF No. 1). Plaintiffs claim that they were advised by Village Capital to withhold their January 2024 mortgage payment until a refinance transaction was completed, and charged late fees when Village Capital suddenly reversed and demanded February's mortgage payment. (*Id*.[6])

On March 11, 2025, Andre C. Howard received a letter from Village Capital informing him that "the servicing of the mortgage loan, including the right to accept payments from you…has been assigned, sold or transferred to Midland Mortgage, a division of MidFirst Bank, as your mortgage servicer effective April 8, 2025." (Compl. Ex. G.) The March 11, 2025 letter informed Plaintiffs that no payments would be accepted by Village Capital after April 7, 2025, and a Welcome Letter from Midland with new loan servicing information was forthcoming. (*Id*. at 1.)

---

[3] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[4] *See* Union Cnty. Clerk's Off., Pub. Land Rec., Mortgage Book 15329, Page 2040, Instrument No. 49392.

[5] Plaintiffs' FAC (ECF 7) cites to exhibits referenced in their TRO Complaint (ECF 1). The court will cite to the ECF 1 exhibits where they are referenced in the FAC.

[6] Plaintiffs allege other conduct by Village Capital that are unrelated to the claims against Defendant MidFirst Bank decided by this opinion and will not be discussed by the Court.

2

The March 11, 2025 letter informed Plaintiffs that if no letter from Midland with servicing information arrived, payments after April 7, 2025 should be sent to Midland at the Oklahoma City, Oklahoma address enclosed in the letter. (*Id*. at 2.)

On March 24, 2025, Plaintiffs received two notices. The first, from MidFirst, informed Plaintiffs that MidFirst was the new owner of the Loan as of March 3, 2025. (Compl. Ex. I.) The March 24, 2025 letter states that the transfer of ownership will appear in the local recorder's office "[i]f this transfer of ownership to MidFirst Bank is publicly recorded." (Compl. Ex. I at 1.) The assignment was recorded with the Union County Clerk on May 1, 2025, 20 days before Plaintiffs filed their TRO Complaint (ECF 1).[7] (Mot., Etkowicz Cert Ex. C.) Plaintiffs were further informed that payments on the Loan should continue to be made to Village Capital until the servicing of the Loan had been effectively transferred to Midland. (Compl. Ex. I.)

The second notice Plaintiffs received on March 24, 2025 was Midland's Welcome Letter, which contained Plaintiffs' new servicing information. (FAC at 3, Compl. Ex. H.) This notice included information regarding how payments towards the mortgage should be made beginning April 8, 2025, when the transfer of servicing duties became effective. (*Id*.) This letter states, in bolded letters on the first page, that "[b]eginning April 8, 2025, please send your monthly mortgage payment to Midland using the temporary payment coupon below." (*Id*.) Taken together, the March 11, 2025 letter and March 24, 2025 notices informed Plaintiffs that ownership of the Loan transferred from MLB Lending to MidFirst Bank on March 3, 2025, and Village Capital was to accept payments towards the Loan until servicing duties effectively transferred to MidFirst's division Midland Mortgage on April 8, 2025.

---

[7] *See* Union Cnty. Clerk's Off., Pub. Land Rec., Assignment Book 1503, Page 2125, Instrument No. 12968.

On May 21, 2025, Plaintiffs filed a TRO Complaint against Midland Mortgage and Village Capital. (ECF 1). This Complaint accompanied a Motion asking the Court to issue an injunction against Defendants prohibiting Midland Mortgage from "initiating or proceeding with foreclosure or any related collection activity" concerning the Property. (ECF 2, Motion for Temporary Restraining Order ("TRO Mot.") at 9.) Plaintiffs alleged that MidFirst failed to acknowledge or respond to Plaintiff's Qualified Written Request ("QWR") for information concerning the ownership of the Loan and MidFirst's authority to collect payments on the Loan. (TRO Mot. at 13.) Plaintiffs alleged that Defendant MidFirst instead issued six Notices of Intent to Foreclose the Property, including two sent to Selina K. Howard, who is not listed on the mortgage, in violation of the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), and the Fair Debt Collection Practices Act ("FDCPA"). (*Id.*) The TRO Complaint and Motion was denied by this Court on July 25, 2025 (ECF 31).

On May 28, 2025, Plaintiffs filed an Amended Complaint. (ECF 7). They assert that Defendant MidFirst Bank failed to comply with RESPA's statutory procedures under 12 U.S.C. § 2605(e) and its implementing regulations, including Regulation X and 12 C.F.R. §§ 1024.35 and 1024.41 by failing to acknowledge receipt of and respond to their QWR within the statutorily imposed time period (Count I). (FAC at 5.) They also claim MidFirst is liable under the FDCPA, by violating their rights under 15 U.S.C. §§ 1692(e), (f), and (g) (Count II). They also allege violations of TILA on the grounds that MidFirst violated 15 U.S.C. §§ 1641(f), (g), and its implementing regulation, Regulation Z by purportedly failing to produce evidence they are the lawful owners of the mortgage with the right to enforce debts owed under the Loan (Count III). On July 8, 2025, MidFirst filed its motion to dismiss for failure to state a claim under F.R.C.P. 12(b)(6). *See generally* Mot. (ECF 19).

4

## II.    LEGAL STANDARD

To survive a motion to dismiss under F.R.C.P. 12(b)(6), Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is satisfied when the Plaintiff alleges sufficient facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the facts alleged need not be probable, they must "show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

When a Plaintiff files a complaint *pro se*, their "pleadings must be liberally construed." *Alexander v. Gennarini*, 144 Fed.Appx. 924, 2005 WL 1805621, at *2 (3d Cir. 2005). The arguments of *pro se* litigants "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the Plaintiffs. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). However, when a Plaintiff alleges legal conclusions disguised as factual assertions, or factual assertions that are otherwise unreasonable, the court is under no obligation to accept such allegations as true. *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (holding a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."). If, after review of the pleadings, the court determines Plaintiffs failed to establish a claim, and construed all reasonable facts and inferences in favor of the Plaintiffs, the court may dismiss the complaint for failure to state a claim upon which relief can be granted. *Stringer v. Bureau of Prisons, Federal Agency*, 145 Fed.Appx. 751, 2005 WL 2009019, at *1 (3d Cir. 2005).

5

### III.    ANALYSIS

### A. RESPA Claims

Defendant MidFirst moved to dismiss Counts I-VI, and Count VIII of Plaintiffs' Amended Complaint. (ECF 19). In Count I, Plaintiffs claim MidFirst violated their rights under RESPA by failing to respond to the QWR they submitted on or around April 8, 2025, in violation of 12 U.S.C. § 2605(e) and its implementing regulations (FAC at 5.) To state a claim under RESPA, plaintiffs must adequately allege (1) the submission of a Qualified Written Request by a borrower to a loan servicer for information relating to the servicing of the loan; (2) a failure by the loan servicer to timely respond; and (3) damages. *Crist v. Cenlar FSB*, No. 23-3448 (MAS) (TJB), 2025 WL 296013, at *2 (D.N.J. Jan. 23, 2025). RESPA allows a plaintiff to allege (1) actual damages and (2) statutory damages, "in the case of a pattern or practice of noncompliance" up to $2,000. 12 U.S.C. § 2605(f)(1)(B). When a plaintiff alleges actual damages, they must show proximate causation—damages alone is insufficient. *Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006).

MidFirst contends that Plaintiffs failed to trigger RESPA obligations when they sent their QWR because it was not sent to their designated address for receipt of QWRs. (ECF No. 19-2, "Br." at 7). RESPA's implementing regulation gives servicers the right to "establish an address that a borrower must use to request information in accordance with the procedures in this section." 12 C.F.R. § 1024.36(b).  Plaintiffs contend that their QWR was sufficiently delivered because the letter was signed for upon delivery to MidFirst's customer service address. (Opp. at 11.) The Third Circuit has not yet addressed the question of whether a loan servicer is obligated to respond to a QWR sent to an incorrect service address. However, this Court finds the decisions of other district courts in this Circuit and the decisions of every other circuit to address this question as persuasive. These courts have held that a failure by a borrower to submit a QWR to the servicer's designated

6

address is "a sufficient basis for dismissal of a RESPA claim." *Purpura v. JPMorgan Chase*, No. 16-3765, 2017 WL 1250993, at *6 (D.N.J. Mar. 24, 2017) (dismissing a RESPA claim against a servicer because the plaintiff's QWR was not sent to the designated service address); *see also Lenchitz v. Cenlar FSB*, No. 22-07216 (GC) (DEA), 2024 WL 1052000, at *5 (D.N.J. Mar. 11, 2024) ("Plaintiffs appear to concede that they sent their second QWR to Cenlar's customer service address and not Cenlar's designated address…the decisions of the Second and Tenth Circuit and other district courts in this Circuit…dismiss on these grounds.") (internal quotations omitted); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014) (holding "failure to send the [QWR] to the designated address...does not trigger the servicer's duties under RESPA."); *Berneike v. CitiMortgage*, 708 F.3d 1141, 1149 (10th Cir. 2013) (holding "[f]ailure to send the QWR to the designated address for receipt and handling of QWRs does not trigger the servicer's duties under RESPA") (internal quotations omitted).

Plaintiffs admitted they failed to properly deliver their QWR to MidFirst's designated address in their Amended Complaint. (FAC at 5.) Therefore, this court holds that MidFirst was under no obligation to respond to the request within RESPA's statutorily imposed time frame. Because Plaintiffs did not properly submit their QWR to the designated service address under any version of the facts alleged, they fail to meet the first element of a RESPA claim. Accordingly, this court holds that Count I of Plaintiff's complaint is **DISMISSED** without prejudice.[8]

---

[8] In their opposition to MidFirst's Motion to Dismiss, Plaintiffs allege they submitted a second QWR to MidFirst's designated address on June 17, 2025. (Opp. at 11.) Plaintiff's claim MidFirst violated 12 C.F.R. § 1024.41(f) by issuing them a foreclosure referral to despite being in receipt of the QWR in violation of the regulation's dual-tracking prohibition. (*Id.*) Although this section prohibits a servicer from filing a foreclosure referral notice when in receipt of a borrower's complete loss mitigation application, Plaintiffs submitted no evidence that their QWR contained a complete application. Additionally, the June QWR-related allegations were not included in Plaintiff's Amended Complaint (ECF 7) and Plaintiff did not request or receive permission to amend their pleadings pursuant to F.R.C.P. 15.1(a). Therefore, the Court will not adjudicate the June QWR-related claims as "[i]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (quoting *Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

## B. FDCPA Claims

In Count II of their Amendment Complaint, Plaintiffs claim they suffered from abusive, deceptive, or unfair debt collection practices in violation of the FDCPA. (FAC at 7.) Plaintiffs allege a representative from MidFirst placed a collection call to Plaintiffs' household, issued intent to foreclose notices, and failed to satisfy Plaintiffs' inquiries about their status as their creditor. (FAC 6-7.) Defendants argue that Plaintiffs failed to state a claim under the FDCPA, and their allegations should accordingly be dismissed with prejudice. (Br. At 9.)

To establish a claim under the FDCPA, a plaintiff must prove that (1) they are a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involved an attempt to collect a "debt" and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *St. Pierre v. Retriveal-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018). MidFirst argues that the statute does not apply to them because they are a "creditor" rather than a "debt collector" under the statute. (Br. at 10.) Pursuant to 15 U.S.C. § 1692(a)(6), a "debt collector" is defined as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, *the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.*"

15 U.S.C. § 1692(b) (emphasis added). In this instance, MidFirst is a creditor who took action to collect a debt owed to them. (Br. at 10.) However, MidFirst's servicing duties are fulfilled by its subordinate Midland. It is plausible that the use of a different name indicated a third-party collector to Plaintiffs, even though Midland's formal names describes it as "a division of MidFirst Bank." (Mot. at 1.) This Court is obligated to construe the allegations in the complaint in the light most favorable to the non-moving party. *Phillips*, 515 F.3d at 233 (3d Cir. 2008) ("courts [should] accept

8

all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.") (internal quotations omitted). The Court is also aware of its duties to use "less stringent standards" when evaluating a complaint filed by *pro se* litigants. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Given this plausibility standard, the court proceeds in its analysis to the fourth element of a FDCPA claim.

Plaintiffs' claim falls short at the fourth element because they fail to name a provision of the FDCPA MidFirst violated. Plaintiffs fail to allege an enumerated unfair or unconscionable practice to collect debt under § 1692(f), any false representation under § 1692(e), or failure by MidFirst to send statutorily required notices under § 1692(g). (*See generally* FAC.) For example, violations of the FDCPA have been found when personal identifying information such as account numbers have been visibly printed on the face of envelops in violation of the language of § 1692(f)(8), which states that "'any language or symbol', except the debt collector's address and, in some cases, business name, may not be included 'on any envelope.'" *See Douglas v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d. Cir. 2014) (quoting 12 U.S.C. § 1692(f)(8)). Plaintiffs fail to allege facts that plausibly assert a claim for relief under the statute. Alleging that a representative disconnected a phone call and failed to call Mrs. Howard back, without more, does not state a claim for a violation of the FDCPA. The exhibits attached by the parties show that the Loan was assigned and recorded by MidFirst at the time of the call, and therefore Plaintiffs claim that the call occurred "without [MidFirst] validating the debt" is unfounded. (FAC at 6.) For these reasons, Count II is **DISMISSED** without prejudice.

9

C. **TILA Claims**

Plaintiffs claim they suffered violations of TILA because MidFirst allegedly failed to provide them with evidence that they were the properly assigned the Loan. (FAC at 7.) Specifically, Plaintiffs claim the letters they received on March 24, 2025 contradict each other because Midland identifies itself as the servicer without stating its parent organization MidFirst is the new owner of the debt. (FAC at 7.) Furthermore, Plaintiffs claim that MidFirst's instructions in its transfer letter that Plaintiffs should make payments to Village Capital prior to April 8, 2025 is "contradictory." (*Id.*)

After reviewing the referenced documents, the Court finds that the letters do not contradict. The transfer letter from MidFirst specifically states that Plaintiffs "will receive additional information from Midland Mortgage, a division of MidFirst Bank, soon" and "in the *meantime*" payments should continue to be made to Village Capital. (Compl. Ex. I) (emphasis added.) The two letters reasonably communicate that Midland had the proper authority to collect payments towards the Loan on behalf of MidFirst. Additionally, Plaintiffs were able to find the proper holder of the Loan prior to the filing of the TRO Complaint. Plaintiffs could have looked up the assignment in the Union County Clerk's Office of Public Land Records, where the assignment of the Loan from MLB Lending to MidFirst appears in Assignment Book 1503, Page 2125, as Instrument Number 12968. (Etkowicz Cert. Ex. C.)

Even if plaintiffs did not have the information to know who owned the Loan, they nevertheless fail to plead a claim under TILA. They fail to state a claim under 15 U.S.C. § 1641(g), which provides in relevant part that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." Plaintiffs do not allege

that any required information enumerated in the statute was not sent to them. Plaintiffs also fail to state the alleged violation of Regulation Z, and fail to state the applicability to 15 U.S.C. § 1642(g), or how purported violations of these statutes caused them harm entitling them to relief. For these reasons, Plaintiffs' TILA claims contained in Count III of the Amended Complaint are **DISMISSED** without prejudice.

### D.  Counts IV, V, VI, and VIII

The remaining Counts in Plaintiff's Amended Complaint contain various requests for relief and measures to be taken by this Court, based on the false assertion that Defendants failed to provide sufficient evidence showing their status as holder of the Loan with the authority to collect loan payments. (FAC at 8, 11, 13, 16.) As previously discussed in this opinion, Plaintiffs received adequate documentation showing the Loan was transferred to MidFist and that Midland was a division of MidFirst collecting payments towards the Loan on its behalf. *See supra*, Section I. The Court dismisses the remaining Counts for the following reasons.

1.  Count IV – Request for Declaratory Relief

Plaintiffs argue that they are entitled to a declaration from this court "clarifying the legal authority of Defendants to enforce the mortgage loan in question." (FAC at 8.) This alleged entitlement stems from "contradictory communications" from MidFirst, and their inability to determine "whether any [D]efendant has lawful standing to enforce the obligation or initiate foreclosure proceedings." (*Id*.)

First, it must be recognized that "declaratory judgment is a remedy, not a count." *Jones v. ABNAMRO Mortg. Group, Inc.*, 551 F. Supp. 2d 400, 406 (E.D. Pa. 2008) (dismissing with prejudice Plaintiff's count requesting a declaration by the court without stating a claim upon which relief may be granted). In Count IV, Plaintiffs do not name a statute under which they are asserting

a claim entitling them to declaratory relief. (FAC at 8.) Additionally, the exhibits submitted by the parties sufficiently determine their respective rights regarding the Loan, as Plaintiffs asked the court to declare.

Furthermore, courts in this district have consistently ruled that declaratory relief is inappropriate to "preemptively challenge mortgagees' ability to foreclose on the basis of invalid title where no foreclosure proceedings have been initiated…under [a Rule] 12(b)(6) standard." *Kayser v. Ocwen Loan Servicing, LLC*, No. 13-5999 (KM), 2017 WL 3578696, at *6 (D.N.J. Aug. 18, 2017); *see also e.g., Espaillat v. Deutsche Bank Nat. Tr. Co.*, No. 2:15-cv-00314-SDW-SCM, 2015 WL 2412153, at *2 (D.N.J. May 21, 2015) ("[D]eclaratory relief requires a live controversy of sufficient immediacy between the parties. In contrast, here, there is no pending foreclosure action to make these allegations relevant.")  This Court holds that Plaintiffs have failed to establish "an actual case or controversy" under 28 U.S.C. § 2201(a) warranting a judicial declaration based on the alleged conduct of MidFirst. Accordingly, Count IV is hereby **DISMISSED** with prejudice.

2. Count V – Recoupment

In Count V, Plaintiffs again fail to establish a cause of action. In fact, they admit that Count V "is not presented as an independent cause of action, but as a valid defense and equitable countermeasure to any foreclosure or collection action initiated by Defendants." (FAC at 11.) Plaintiffs attempt to ground their recoupment claim in the Uniform Commercial Code § 3–305, but fail to specify any facts showing why they are entitled to recoupment other than the alleged "conflicting communications" and "failure to provide valid documentation showing [MidFirst] is the holder in due course of the note" previously discussed in this opinion and alleged in the Amended Complaint. (FAC at 11.) Since Plaintiffs have not alleged a cause of action or

12

circumstances entitling them to assert a defense, such as a foreclosure action, they many not proceed on their recoupment claim. *Wong v. Wells Fargo N.A.*, No. 14-520 (CCC), 2015 WL 616403, at *3 (D.N.J. Oct. 20, 2015) (dismissing Plaintiff's claims when they had no bases for asserting a defense to a foreclosure action, holding they "fail[ed] to provide any facts supporting that there is a foreclosure action pending against them.") Accordingly, Count V is **DISMISSED** without prejudice.

### 3. Count VI – REMIC Claims

Plaintiffs generally allege that MidFirst failed to produce documentation showing that the securitization of the Loan "complied with applicable REMIC [Real Estate Mortgage Investment Condit] closing deadlines or IRS regulations." (FAC at 13.) Plaintiffs claim that discovery is needed "to compel disclosure of the IRS Form 1066, Schedule Q, PSA, and any trust-level assignment documentation that would clarify ownership and enforcement rights." (*Id.* at 14.) Plaintiffs also allege that there is an "absence of any assignment records in the public land records." (*Id*. at 13.)[9]

These allegations are insufficient to confer standing. "[A] rule often applied by courts in this district is that a mortgagor, or borrower, does not have standing to allege that an assignment between two third parties is invalid." *Kayser*, 2017 WL 3578696, at *7 (internal quotations omitted.). *See, e.g.*, *In re: Sia*, No. 15-1366, 2015 WL 9462089, at *9 (D.N.J. Dec. 28, 2015) ("In the context of a mortgage assignment, this district has often held that a mortgagor, or borrower, does not have standing to allege that an assignment between two third parties is invalid.") Courts in this district have even found that a holder of a note may foreclose on property when a note has

---

[9] In fact, the assignment of the Loan from MLB Lending to MidFirst Bank was recorded on May 1, 2025, prior to the filing of Plaintiff's Amended Complaint on May 21, 2025 and Plaintiff's contention that a record of proper assignment is absent from public land records is false. (FAC at 13; Etkowicz Cert Ex. C.)

13

been mis-assigned in the past. *Heriveaux v. Durkin & Durkin LLC*, No. 18-13148 (KM) (MAH), 2020 WL 487290, at *7 (D.N.J. Jan. 30, 2020) ("Plaintiffs' theory on the FDCPA front appears to be that since the note and mortgage were incorrectly assigned in the past, [Defendant] is not now entitled to foreclose on the property. These contentions are meritless…[a]lthough the mortgage was mis-assigned three times during its life… those errors were cured…[Defendant] was entitled to initiate foreclosure proceedings.") The law is clearly established that Plaintiffs do not have standing to challenge the securitization of the Loan. Therefore, Count VI of Plaintiff's complaint is **DISMISSED** with prejudice.

    4.   Count VIII – Quiet Title Claims

In similar form to the previous counts under this section, Plaintiffs seek to "quiet title" on the basis that MidFirst has not shown it is the lawful owner of the Loan. (FAC at 16.)  MidFirst argues that a quiet title action is inappropriate where Plaintiffs "do not allege any other party has attacked the validity of the Mortgage." (Br. at 21.) First, Plaintiffs lack standing to challenge MidFirst's status as mortgagee under *Kyser*, and second, MidFirst correctly asserts that no claim for quiet title can be made when there is no third-party claiming title to the Loan. (Br. at 15.) "One of the elements of a quiet title claim is that there must be some doubt or dispute as to the status of the land. Here Plaintiffs do not allege that any other party has attacked the validity of Plaintiff's mortgage." *Schiano v. MBNA*, No. 05-1771 (JLL), 2013 WL 2452681, at *26 (D.N.J. Feb. 11, 2013). Accordingly, this court holds that Plaintiffs fail to assert grounds for a quiet title claim, and Count VIII is hereby **DISMISSED** with prejudice.

**IV.    CONCLUSION**

For the reasons stated above, the Defendant's motion to dismiss Plaintiffs' Amended Complaint is **GRANTED**.  An appropriate order follows.

14

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**


Orig:  Clerk
cc:    Andre M. Espinosa, U.S.M.J.
       Parties